Case number 19-2386, Kenneth Lowe v. Walbro LLC, or largeness not to exceed 15 minutes per side. Mr. Klykulik for the appellant. Good morning, may it please the court. I'm Matt Klykulik on behalf of plaintiff appellant Kenneth Lowe, and I'd like to reserve three minutes for rebuttal, please. Very well. Here the district court erred in granting defendant Walbro's summary judgment without holding a hearing on the motion because Kenneth Lowe states a question of material fact as to his claim of age discrimination under Michigan's Elliott Larson Civil Rights Act by way of both a direct and indirect evidence analysis. The direct evidence probably properly considered combined with other factors suggesting discriminatory animus pursuant to the Walbro's termination of Mr. Lowe was motivated at least in part by age-based discriminatory animus. Tom Davidson was hired as the plant general manager, the top ranking person at Walbro's Cassidy facility in June of 2016. After only three months in September, Davidson brought up plaintiff's failure to meet his performance expectations with HR vice president Adam Arkels and at an offsite meeting with Walbro's executive team in the context of a potential reduction in workforce. I see there's a question I couldn't figure out from the record. Did Davidson replace someone? Was there a plant manager before him or was this a newly created position? Yes, your honor, there were multiple plant managers before him. There is evidence in that I don't have that deposition testimony before me, but there were multiple plant managers before him and he came in in June of 2016. He directly replaced someone so there was no gap in time. This was a position they'd always had at the plant. That's my understanding. I'm sure Mr. Sasanti could correct me if I'm wrong. And your client would have been reviewed? His performance would have been evaluated by the predecessors to Mr. Davidson? Sure, there are many different performance evaluations and annual employment reviews, although interestingly no annual reviews, even though they're required by the Mr. Davidson was the general manager and that's one of the issues that I think raises an inference of discrimination and pretext is that he wasn't following the ordinary procedures with regard to his concerns about performance or with regard to purportedly bullying employees, etc. This is all done informally and verbally rather than in writing and as part of his employment record. So in other words, you could imagine a situation where a company just creates a new position, brings in a new manager to oversee, take a new job and that person then evaluates how the staff is doing. But you're saying your client always had a boss, the boss just changed over time, and your client received good evaluations previously, no issues in work performance and all of a sudden new boss comes in. With good recommendations, especially with regard to the blow molding and robotics side of the plant that was taken away from him, he had been performing in a supervisory role as to that portion of the plant for approximately seven or more years and his performance reviews with regard to that were glowing. And then when Mr. Davidson came in again within three months, he's complaining to the higher-ups about his job performance without again, you know, putting anything in writing, without providing training, without suggesting a transfer or anything like that. So... In your position, basically, that there's direct evidence of age discrimination because of what was said, your client was hired, or are you primarily going on an indirect evidence? I think that our direct evidence argument is very strong here. There were a number, over a dozen, different ageist remarks made by Davidson to Lowe over the course of his time. The first one was made in October of 2016, I believe, where Lowe was getting an event honoring Lowe's four years of service for the company. Davidson said, old man, you've been here longer than I am old. Aren't you ready to retire? And then at his termination meeting, which Davidson presided over two years later, in June of 18, he said, well, you're kind of getting up there in years, you're at retirement age, you're going one way and the company's going the other. And then there are perhaps 10 other remarks. Were any of these corroborated by a third person? I don't believe so. There is just his direct testimony. But, you know, at this stage in the game, you certainly look at, you credit his testimony to create a question of material fact. Were at least one of these discredited by, was the HR, I forget her name, but the woman who ran HR, was she supposedly present for one of these and said it didn't happen? Correct. The HR manager, Deborah Rarida, was at the termination meeting and she claimed that it didn't happen. So your position is that it's enough to overcome summary judgment when a and in fact are disputed by at least one third party in one instance. I'm not judging the outcome. I just want to make sure that's sort of the rule of law you want us to adopt. I don't think it's anything that I need you to adopt. I think that's the standard to review for a summary judgment motion, that you credit the plaintiff's evidence, his direct testimony that this is what it didn't. And again, there was approximately 12 different, different remarks that were made over the course of the two years that David went to supervisory employee. The other remarks being along the lines of Lowe being too old to put putting in the hours he did at the employment and that he was losing a step. And then also in addition to the direct evidence, it's appropriate to consider the addition of suspicious circumstances surrounding his term termination that give rise to a negative inference of age discrimination in the direct evidence analysis pursuant to the Howley decision of the sixth circuit that I said in my briefing. And this includes Davidson taking over Lowe's responsibilities on the blue molding robotics side of the plant, which was approximately three quarters of the building in the highest growth area of the facility. He basically gutted his job, sent him to the North tank area of the plant, and then shortly thereafter decided, you know what, what I've left you with is not to justify this continued area manager position. So now we're going to end the position and terminate you. So basically. Can I ask you, so I understand that, that history when Mr. Lowe was moved from position to position each time, I guess with less responsibility, but was he replaced? I mean, he was sort of a manager, so he was managing other employees, but when he, when he was removed as a manager and sent somewhere else, was he replaced as a manager? Yes. What happened with regard to him losing the blue molding robotics side of the plant, Davidson took over the new, the new plant manager, the 35 year old Davidson took over his job as the supervisory employee over that portion of the building and Osterbeck and Windsor who had previously reported to Lowe now reported to Davidson. And then when he was left with the North tank area of the plant, he was really only supervising at that point, a couple of janitorial employees that weren't even on the organizational chart and a couple of younger preexisting employees at the company took over his position at the North end when he was terminated. Well, just to be a little more precise about that. So, I mean, it sounds like he was sort of a middle manager. You have a Davidson, you have Lowe and then people were reporting to Lowe and Davidson decides I don't need a middle manager. They can just report to me. We don't need, we don't need that position. Isn't that another way to look at that? Well, that would be the defendant's argument, but worse, but worse indicating that he raised these job performance issues that had never previously existed. Didn't give him any opportunity to correct it. It was trying to get him fired over it within three months. And then likewise indicated that it was also because he was bullying these other employees. He had a completely different story to the HR manager, Debra Rared, and he, and he directed her right when she was hired in March of 2018, the first thing on her observed behavior document that he directed her to make was something was, was him saying, yes, I eliminated those responsibilities because he was bullying posture back in the winter, not because you've had poor job. My question there in no instance, was anyone really ever put in his position? I mean, one way to look at it would be, we have people who maybe aren't giving a lot of value add, or we have positions we can remove because the value add, I guess isn't, isn't, isn't greater than the, than the cost of the position. Oftentimes someone will be, oftentimes in these cases, someone is, is actually replaced, who's actually performing their job. And in this case, it just, it sounds like no one really was performing this position as Lowe's different position is removed from different positions. No one was really filling those in a sort of one-to-one, one-to-one, one in, one out. I agree that Mr. Lowe's area manager position as it existed before Davidson came in as the plant general manager did not exist after he was terminated, but it was a two-step process that Davidson was engaged in to, to, to broom him out of this, out of the company after 40 years of employment, the first step, he tried to get him fired for job performance issues. The executive management and Arkell weren't, weren't biting on that. And so thereafter he started engaging in pages for marks, removing his job responsibilities and that, so that he could then later say, see, we don't need him around anymore. And then thereafter, after he, after he, after he set the stage for that, they agreed with, so I think it was an orchestrated plan that Davidson did from the outset. And then maybe that was his goal from the outset because it started so immediately after his fire. To address briefly the mixed motive analysis, defendants argue that the percentage of employees in their fifties and sixties actually increased after Davidson's hire, but that's not really relevant because an employer does not have to, does not have to discriminate against all members of the class to legally discriminate against a specific member of the class. And Davidson was a decision maker in removing those job responsibilities and then terminating him. And his ageist remarks to Lowe sufficiently reflects his predisposition to discriminate against an older person. And while defendant notes that Arkell did not terminate Lowe when Davidson expressed his satisfaction with him in September of 2016, again, Davidson's response was to make derogatory ageist remarks, suggesting that Lowe retire, gut his job responsibilities, have Rarid create the observed behavior documents that Arkell's would later agree with Lowe's termination. And Arkell's in fact said that the purported bullying behavior documented in this informal observed behavior document that Lowe was never even made aware of was the final straw. So, defendant's brief is arguing that it would have terminated Lowe without consideration of age by evaluating Lowe's position after Davidson had gutted it. And at that stage, Davidson's age discrimination already pervaded and tainted the termination decision process. I believe we also have some indirect evidence argument and that while the area manager position was a unique and no other local employee appears to have been similarly situated, that doesn't mean he can't meet the fourth element of the prima facie case. And under the Lindsay decision of the Sixth Circuit, so long as additional evidence exists beyond the first three elements of the McDonald-Douglas test that indicate discriminatory intent in light of common experience, the required inference of discrimination can be made. And that's true even if he can't point to a similarly situated individual outside the relevant protected group who is treated more favorably. And I think there's plenty of evidence of pretext here, as I've discussed in my briefing under the Perry decision, the Ruffin decision, giving two different reasons for eliminating his job responsibilities under Schoonmaker and any evidence of performance issues or bullying issues under Howley. So I see that I'm out of time, but thank you. Thank you. Thank you, counsel. Mr. Sassanti. Yes. Good morning, your honors. Thank you. May it please the court, David Sassanti appearing on behalf of Appelli Walbro. If I can start, I just wanted to address a couple of the questions that were asked by Judge Riedler. To answer your question, judge, there was always a plant manager position at this particular facility, however, at the time Davidson was hired, there had been a void for a period of time. It's not entirely clear from the record how long there was that the plant was running without a plant manager, but he replaced the position, but not a person. With regard to the performance evaluations, to say that they were regular and routine would be a vast overstatement. The most recent evaluations in plaintiff's personnel file are from 2010 and 2014. So they were, for whatever reason, they were not being done routinely and regularly. So it's not as if Davidson dropped the ball and stopped performing formal evaluations, those just were not things that were done on a routine basis. As you've seen from the briefing and as the lower court found, it's our position that this case is appropriate for summary judgment and the trial court made the right decision. Really the only evidence in this case, if you will, of any alleged age discrimination are the comments that Mr. Lowe has attributed to Tom Davidson. Judge Riedler, you noted earlier. It's Riedler. Oh, I'm sorry. I'm sorry. Riedler. Sorry about that. You noted earlier. And while I concede that for purposes of summary judgment, we have to take the comments as true. There is no corroboration. In fact, folks who were present when the alleged comments were made, denied those. Debbie Rard, the- That's irrelevant for summary judgment purposes. As you say, we have to, we don't judge credibility. Mr. Lowe said we take that as a fact for judging summary judgment, right? Absolutely, Your Honor. Absolutely. The only reason I mentioned it is more so anecdotally to say that given the fact that the statements are the only potential evidence of age discrimination in the record, the fact that they're not corroborated and in fact highly suspicious in nature, as you may have seen the testimony about what happened during the termination meeting came out after a break during the deposition, and we had, I thought concluded what was discussed during the termination meeting, but, but that's, you're, you're right, Your Honor. That's neither here nor there for purposes of what you're trying to decide today. For purposes of today, the issue is do those alleged comments essentially result in a question of fact for the jury to decide as to whether or not plaintiff was terminated based on his age. And the overwhelming evidence in the record says, no, it doesn't. Mr. Davidson has a track record, undisputed track record of employing, hiring, and working with quote unquote older employees. And the track record there is there was a reduction in force in 2016 that Mr. Lowe could have been selected for. He was not, he was 58 years old at the time. Mr. Davidson hired numerous employees who were in their fifties, including Debbie Rahr, the HR manager, who's 57. And when Mr. Lowe's job was eliminated, Mr his, his job duties were provided to two employees in their fifties and the average age of employees in their, or the percentage, I'm sorry, of employees in their fifties and sixties actually increased under Davidson's stewardship. So there's, there's no evidence of any general animus against older employees. But what I think really moved Mr. Sasanti, Mr. Sasanti, do you have any case, um, analogous to this where evidence of the supervisor working with older people, uh, negated direct alleged comments of ageism, uh, at a summary judgment level. I mean, do you have any case really analogous to this? Not, not on all fours, your honor. No, but the reason I mentioned that is because it does speak both to the standard for direct evidence and on a circumstantial indirect evidence. And that is that even with direct evidence in play, there has to be some evidence of a causal link between the alleged discriminatory animus and the adverse employment action. And of course, when you're talking about indirect evidence, you're looking at pretext and whether the, uh, articulated reason for the decision was in fact valid and, and, and really the, the, the standard is whether it was true or not, did they, did the defendant provide a false reason? So when you look at Mr. Davidson's track record, you're looking at whether this is an individual who really has animus against older employees, um, such that we're even talking about direct evidence. And then of course, whether or not that alleged animus influenced the decision in this case. Well, let me ask a question for you. Are you familiar with the Michigan Supreme Court case of Dubrow v. Century 21 Great Lakes? Yes, your honor. All right. In that case, they, you know, the superior told the person who was fired that he was quote, getting too old for this S and the Michigan Supreme Court said that was direct evidence of age discrimination and reversed the lower court's grant of summary judgment. Now, why does not Dubrow apply here as direct, what you're, what Davidson allegedly said to Lowe sounds very similar to what was said in Dubrow. I would say there are two primary distinguishing factors. One of which is factual. One of which is legal. Factually speaking, there's no evidence in that case that anyone other than the person who made the statement was the decision maker with regard to the decision to terminate plaintiff. In this particular case. And as I was alluding to earlier, it was going to allude to earlier. I think this is what really moved the district court. There were multiple individuals for, to be exact, who were involved in the decision to eliminate Mr. Lowe's position. Mr. Lowe does not attribute any discriminatory animus to any of those folks. In fact, he said that he trusts Debbie Rard implicitly. Debbie Rard shortly after she was hired, did her own independent analysis. There is no fact in the record that she was directed by Mr. Davidson to do this analysis. There's no fact in the record that Mr. Davidson somehow suggested the conclusion she should reach, but she came to her own conclusion that the area manager position was no longer needed. She had discussions with her supervisors, William Gahn and Adam Markels to that effect, and then also spoke to Mr. Davidson. And at the end of the day, the four individuals, other than Mr. Davidson, who were involved in the decision to eliminate this position, all agreed that it should be eliminated. So in that sense, Davidson, he was part of that group. But I think that what else distinguishes Dubrow? I understand that. The main legal distinction is that there's no evidence in Dubrow that the argument applied or that the defendant in that case even raised a mixed motive argument. And Michigan law is very clear, both under Stysinski and Will Coxton, that even if you have a case of direct evidence, meaning that the plaintiff has proven that there was animus and that it was a motivating factor in the decision, the defendant can still prevail at summary judgment if it shows that if it can show that it would have made the same decision, even if the impermissible consideration had not played a role in that decision. In this case, largely for the reasons that I just discussed, which I don't believe were present in the Dubrow case, we have presented evidence showing that if you take Davidson out of the picture, the same conclusion is reached because individuals other than him came to that conclusion without any influence or suggestion from Davidson that the position should be eliminated. And again, those individuals, it's undisputed that those individuals, according to plaintiff, do not harbor any discriminatory animus. So you remove Davidson from the picture. Was there an allegation that RARD started putting together a list of errors or violations committed by Lowe and the timing of that was a little suspect? There's an allegation. I would say there's a theory about that, but it's just a theory. So think of this. Debbie RARD is hired in as an HR manager and she has employees undisputedly coming to her raising complaints. I would think it would be more suspicious for a new HR person to be getting complaints about an employee and not documenting those complaints than it would be to say, oh, you know, I can't believe she started documenting that there were complaints that were being made about this guy and they were behavioral in nature. As it turns out, other than the fact that the final straw, as it was testified to, and as we've noted in our briefing, other than the fact that his behavior, his behavior being plaintiff's behavior, motivated the timing of the position elimination, it's very clear in the record from Davidson, Adam Markels, Debbie RARD, that the behavioral issues that RARD independently and on her own started to record were not the basis for the decision. Davidson testified that Lowe's position would have been eliminated even if none of those issues existed, as did the other folks. So you kind of have two parallel tracks here. Eliminated on what basis? Eliminated because he wasn't up to snuff or eliminated because they just didn't need the job anymore? As it turns out from the record, it's a little bit of both in the sense that Davidson comes in and during the first six months of his employment, he's going to plaintiff and asking about the status of blow molding machines. What's going on? Is the machine down? What's happening? And he's consistently getting the answers. I don't know. Let me check. And there's no dispute in the record about that, by the way. I know there's been a big focus on the removal of these duties, but Lowe himself never objected to losing that portion of his job. So Davidson, upon time after time after time of going to Lowe and not getting answers, is going to Osterbeck and Windsor, who's in charge of the robotics, and he's getting the answers he needs. So I think you're- Is it an allegation that those employees were trained on this new technology and Lowe wasn't? Well, Lowe was not ever responsible for running a blow molding machine. That was not his job. And in fact, Davidson testified, I didn't need Lowe to run a blow molding machine. I just needed him to know what was going on on the blow molding side of the operations and making sure it was getting done and he kept going to Lowe and Lowe would not have the answer, so he would go directly to the source and so that's when he decided after six months, which is not six days or six weeks, it's a sufficient amount of time to judge an employee's performance. He says, okay, this is not working. I'm going to handle these duties. The rest of your job remains the same. You're going to handle the north end where the carburetors are being made. You're going to have the janitors continue to report to you. You're going to continue to deal with building maintenance and facility maintenance, and you're going to deal with our vendors. And so Davidson testified that at the time he made the decision to remove the blow molding responsibilities from plaintiff's purview, it was done with A, the belief that it would help plaintiff succeed because it would eliminate an area that he either didn't care about or wasn't equipped to handle. And he had no intention whatsoever of terminating Lowe at that point in time. This was actually done to help him perform. Well, in the ensuing months that follow from there, it's largely the same story as blow molding. Davidson's getting complaints about things not getting done. Davidson's going directly to the employees instead of Lowe. And as in a corresponding track, RARD is looking at the whole employee roster, if you will, and saying, look, we don't really need this position. I don't think. And Davidson says, yeah, you know what? You're right. We really don't need this position because where I thought Lowe would perform these duties successfully, he's not doing that either. And in fact, it's the other employees who are doing the job. So we can very easily get rid of this position. It's $95,000 a year. And we can disperse his duties to others in the plant, which is exactly what happens. That makes some sense to me. But I think you've said that this was also justified in part based upon his performance, that he had performance issues. And there, I just am bothered a little bit by the fact that he was never given a bad evaluation ever. I don't think, and you're part of the answer is, well, he didn't get evaluations, but there's not a single bad evaluation of him anywhere until just on the precipice of his termination, I think. Yeah, I understand that. All I can tell you in that regard, your honor, is Davidson came into a plant that was very dynamic in nature in the sense that it was largely transitioning and had been from a carburetor plant to a gas tank plant involving wall molding machines. What Davidson had been, or I'm sorry, what plaintiff had been doing prior to that in terms of performance and job duties was not really what he was doing or responsible for at the time the position was eliminated. And I think Davidson's position is that plaintiff was not doing what I wanted him to do, but ultimately carrying the day though is Debbie Rahrd and her talking to Davidson and they come to the collective conclusion that this position just is not needed. And in fact, it was never reinstituted and there was never a replacement. So the area manager position doesn't not exist anymore. So I see I'm at my time. If there are any other questions, I'm certainly happy to answer them. But if not, I thank you for your time and attention. Thank you, counsel. Is there a rebuttal? Yes, please. Thank you. Um, I believe that defendant's argument largely fails to be the evidence in light most favorable to the non-movement, which you have to do. Defendant argues that the performance evaluations were not regular. Uh, and he also indicates that there was a brief void in the plant manager position before Davidson was brought in. Exhibit 15 to our response brief in the district court has performance evaluations from 2011, 2012, and 2013, uh, that are all glowing and exhibit 21 of our, uh, response brief in the trial in the trial court as a 2014 promotion recommendation that is likewise glowing. So, and then I guess there was a brief absence of a plant manager. And then when Davidson came in, he was there for two years and did not perform a employment manager Davidson made the decision to eliminate half of, uh, low job responsibilities and to terminate low and that's at ages 70 and 71. It was deposition that it was his decision. The others merely rubber stamped it. Rared, uh, testified that while she was creating this, uh, um, observed behaviors document, the first entry of which is, uh, Davidson having come to her and saying, oh, I removed Osterbeck and Windsor from, um, low job responsibilities because he was bullying them in 2015 and 2016, 2015 is before Davidson was hired and again, that's two years before Rared was even an employee. So he's the one who hired her. He's the one who instigated her investigation. She may have continued after that, but she also testified that she did not really investigate low because Davidson had that time had already recommended his termination. So really, again, it's just a, uh, a rubber stamp. And likewise, Adam Arkells, he testified that he never reviewed plaintiff's employee file at any time before he participated in his termination. Nor is he aware of the factual basis for Davidson's purported concerns regarding plaintiff's performance. Arkells also admitted that he never asked for plaintiff's explanation for any of the alleged complaints about plaintiff, nor did he conduct any investigation and that's Arkell's debit pages eight and nine and 49 and 50. The only argument or the only statement about, um, lowest performance that Davidson indicated he gave him was to verbally say that he didn't feel he was fully engaged on the blow molding side. And that's, you know, that's hardly the kind of indication to say, you know, your, your job responsibilities are at risk here. We're going to completely restructure your job and then run you out of the company. Uh, they failed to offer him any training, transfer performance, improvement plans, improvement plans that were provided to younger employees like Jake Germain, and, uh, I see that my time is up, so. Thank you very much. And thank you to both council. I will take the case under submission.